## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Jennifer Heitsch,

                 Plaintiff,        Case No. 24-cv-10443

v.

                                     Judith E. Levy
                                     United States District Judge

JPMorgan Chase Bank, N.A.,

                                     Mag. Judge Curtis Ivy, Jr.

                  Defendant.

_____/

## OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [16], OVERRULING DEFENDANT'S OBJECTION [15], AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [14]

On September 23, 2024, Magistrate Judge Curtis Ivy, Jr. issued a Report and Recommendation ("R&R") (ECF No. 14) recommending the Court grant in part and deny in part Defendant JPMorgan Chase Bank, N.A.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and/or 12(b)(7). (ECF No. 6.) Plaintiff Jennifer Heitsch filed two objections to the R&R (ECF No. 16), and Defendant responded. (ECF No. 18.) In addition, Defendant filed one objection to the R&R. (ECF No. 15.) Plaintiff responded to that objection (ECF No. 17), Defendant

replied (ECF No. 19), and Plaintiff filed a document that appears to be a sur-reply.[1] (ECF No. 20.) For the reasons set forth below, the parties' objections (ECF Nos. 15, 16) are OVERRULED. The R&R (ECF No. 14)

---

[1] In the document that appears to be a sur-reply—which is titled "Plaintiff's Reply to Defendant's Responses to Plaintiff's Objections to Report and Recommendation . . ."—Plaintiff argues that

> [t]he Court should not consider [Defendant's] Reply and strike it from the record since it is not permitted by the Local Rules or the Court Rules. To the extent that the Court is going to consider the Defendant's Reply; out of fairness to the parties, it should consider the following Reply as well.

(ECF No. 20, PageID.376.) Plaintiff is incorrect that there is no rule that allows a party to file a reply in support of an objection to a report and recommendation. Eastern District of Michigan Local Rule 72.1(d)(4) states that "[a] person may file a reply brief within 7 days of service of a response" to objections. E.D. Mich. LR 72.1(d)(4). It was therefore permissible for Defendant to file its reply, and the reply was filed within the time frame specified by Local Rule 72.1(d)(4). (*See* ECF Nos. 17, 19.) Plaintiff, however, did not file a reply in support of her objections that complies with Local Rule 72.1(d)(4), given that her "Reply" (1) addresses Defendant's objection (not her own objections) and (2) was filed nine days after Defendant's response to her objections. (*See* ECF Nos. 18, 20.) As a result, Plaintiff's filing seems to be a sur-reply opposing Defendant's objection. The Court's Practice Guidelines provide that "[s]ur-replies are not permitted unless new law has emerged since the response was filed." *See Judge Judith E. Levy*, United States District Court for the Eastern District of Michigan, https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=44. Plaintiff has not indicated to the Court that the emergence of new law justifies the filing of a sur-reply. The Court nevertheless considers the document that she refers to as her "Reply." (ECF No. 20.) The Court also considers Defendant's properly filed reply. (ECF No. 19.)

is ADOPTED, and Defendant's motion to dismiss (ECF No. 6) is GRANTED IN PART AND DENIED IN PART.

## I.    Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

## II.    Legal Standard

A party may object to a magistrate judge's report and recommendation on a dispositive motion, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are

vague and dispute the general correctness of the report and recommendation, *see Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

## III.  Analysis

The R&R recommends that

> Defendant's Motion to Dismiss (ECF No. 6) be **GRANTED IN PART, DENIED IN PART**. Count I (breach of contract) should remain, but Count II (Michigan's EPIC [Estates and Protected Individuals Code] transfer of death Acts) and Count III ([common-law and statutory] conversion) [should] be **DISMISSED**. The [R&R] also suggests that Defendant be given an opportunity to more fully brief its motion for Rule 12(b)(7) dismissal/Rule 19[2] joinder.

(ECF No. 14, PageID.314 (emphasis in original).)

---

[2] References to "Rule 19" in this Opinion and Order are to Federal Rule of Civil Procedure 19.

Defendant objects to the R&R's analysis of the breach-of-contract claim in Count I. (ECF No. 15.) Plaintiff objects to the R&R's recommendation to dismiss the conversion claims in Count III. (ECF No. 16, PageID.328–332.) In addition, Plaintiff objects to certain language in the R&R's section on Rule 12(b)(7) and joinder of necessary parties. (*Id.* at PageID.333–334.) The Court addresses each objection below. The Court finds that the parties' objections fail.

## A. Defendant's Objection to the R&R's Analysis of the Breach-of-Contract Claim in Count I

Defendant objects to the R&R's analysis of the breach-of-contract claim in Count I "insofar as the [R&R] concludes that there is a conflict between the signature cards for the Accounts attached to the complaint, and the electronic records for the Accounts [attached to Defendant's motion] which identify the beneficiaries." (ECF No. 15, PageID.319.) Defendant argues that "[t]here is nothing on those cards to suggest that every beneficiary is identified thereon." (*Id.* at PageID.323.)

This argument does not demonstrate that there is an error in the R&R. The R&R agrees with Defendant that "the signature cards do not purport to identify all beneficiaries." (ECF No. 14, PageID.301.) The R&R goes on to state that "the opposite is also true—the cards do not

make clear that they are not intended to list all beneficiaries, that there may be more beneficiaries than named on the card." (*Id.* (citing ECF No. 1, PageID.55, 108, 112).) The R&R finds that "[a]s a result, there is a question as to the evidentiary value to be given to the cards." (*Id.*) In its objection, Defendant presents no information that shows otherwise or that shows that the R&R contains an error. Moreover, to the extent this portion of Defendant's objection repeats an argument that appears in its motion, the objection is improper because the argument was before Magistrate Judge Ivy. (*See* ECF No. 6, PageID.210 ("The signature cards do not purport to identify all the beneficiaries on the Accounts . . . ."); ECF No. 14, PageID.301 ("Defendant explained that the fact that the signature cards only list Plaintiff as beneficiary is of no moment because the cards do not purport to identify all beneficiaries." (citing ECF No. 6, PageID.210)).) *See Coleman-Bey*, 287 F. App'x at 422.

Defendant next argues that the Court "does not need to accept [Defendant's] explanation—nor its counsel's—as to why the signature cards attached to the complaint are not wholly determinative of who the beneficiaries are on the Accounts" because the Court "need only refer to

the Account Agreement[3] to determine that it does not require [Defendant] to identify an account's beneficiaries through reference to a signature card, and therefore no breach of contract has been identified." (ECF No. 15, PageID.323.) Defendant asserts that

> [t]he failure of Plaintiff's complaint lies in assuming the right to receive payment as a beneficiary can only be established through reference to the signature cards she attaches. The Account Agreement does not say that [Defendant] will pay beneficiaries as designated on a signature card. Rather, it says: "If we receive proof you've died, we will pay the balance of the account to the

---

[3] The Account Agreement's full title is "Deposit Account Agreement and Privacy Notice." (ECF No. 1, PageID.158; ECF No. 6-2, PageID.228.) Defendant acknowledges in its motion that Plaintiff attached a copy of the Account Agreement "as Exhibit 7 to the Amended Complaint." (ECF No. 6, PageID.203 (citing ECF No. 1, PageID.13, 158).) Defendant attached "a clearer copy of that Account Agreement as Exhibit 1" to its motion, given that "the print quality of Plaintiff's Exhibit 7 renders the document somewhat illegible in places." (*Id.* at PageID.203 n.5; ECF No. 6-2.) The Account Agreement is referenced in the amended complaint and forms the basis of Plaintiff's breach-of-contract claim. (*See* ECF No. 1, PageID.13–14.) Therefore, the Court may consider the Account Agreement without converting Defendant's motion to dismiss into a motion for summary judgment. *See Wershe v. City of Detroit*, 112 F.4th 357, 372–73 (6th Cir. 2024) ("If a district court considers materials outside the pleadings at the motion to dismiss stage, it must ordinarily convert the motion to dismiss into a motion for summary judgment. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). However, the district court may consider exhibits attached to the complaint, exhibits attached to the motion to dismiss briefing, items in the record, or public records without converting the motion to dismiss when these items 'are referred to in the [c]omplaint and are central to the claims contained therein.' *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)."), *cert. denied sub nom. Wershe v. Detroit*, No. 24-545, 2025 WL 247463 (U.S. Jan. 21, 2025).

beneficiary or beneficiaries you designated." *See* Account Agreement, at p. 6, § II.A.3&4 . . . ; ECF No. 6-2, PageID.23. [Defendant's] electronic record identifies three designated beneficiaries. Pursuant to the terms of the Account Agreement, Plaintiff cannot point to a signature card to demonstrate a breach of contract. Therefore, Plaintiff has failed to state a claim for breach of contract even if the Court does not consider [Defendant's] electronic records, which identify three beneficiaries on the account.

(*Id.* at PageID.324.)

Defendant again does not show that the R&R is flawed. The portions of the Account Agreement that Defendant cites state:

### 3. "Payable on death" account

If you establish your account payable on death to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

### 4. "In trust for" (informal trust) account

If you establish your account as in trust for ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as an "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal

8

shares unless the signature card provides otherwise. We do
not offer ITF accounts in all states.

(ECF No. 1, PageID.163 (emphasis in original); ECF No. 6-2,
PageID.233 (emphasis in original).) These provisions do not indicate
where beneficiaries are designated. Therefore, the provisions do not
establish that beneficiaries are designated in Defendant's electronic
account records—and not on a signature card. As a result, the language
Defendant references from the Account Agreement does not dispose of
Plaintiff's breach-of-contract claim. Plaintiff does not show that the
R&R is incorrect. And to the extent Defendant is rearguing in her
objection that Plaintiff fails to state a breach-of-contract claim in Count
I because her allegations rely entirely on the signature cards and
because the Account Agreement does not say that beneficiaries are
designated on a signature card (*see* ECF No. 6, PageID.210; ECF No.
13, PageID.288, 290; ECF No. 15, PageID.324), this portion of the
objection is improper. *See Coleman-Bey*, 287 F. App'x at 422.

In the final part of its objection, Defendant appears to argue that
the Court may consider its electronic account records, which are
attached to Defendant's motion (ECF No. 6-2) but not to the amended
complaint, without converting the motion to dismiss into a motion for

summary judgment. Defendant argues that because "Plaintiff's breach of contract claim is predicated on the allegation that [Defendant] refused to recognize her as the sole beneficiary on the Accounts based on the beneficiary designations of record on those Accounts, [Defendant's] electronic record is integral to that claim and refutes it." (ECF No. 15, PageID.325.) In the paragraph that precedes this argument, Defendant quotes language from cases discussing when a court may properly consider documents "referred to in the pleadings," including "exhibits attached to [a] defendant's motion to dismiss," in deciding a motion to dismiss under Rule 12(b)(6). (*Id.* at PageID.324–325.)

In this portion of its objection, Defendant does not identify an error in the R&R or provide a factual or legal basis for the Court to find that the R&R is mistaken. The objection is therefore improper. *See Pearce*, 893 F.3d at 346. Moreover, Defendant repeats an argument in its objection that it made in its motion and reply brief: that the Court may consider Defendant's electronic account records in resolving the motion. (ECF No. 6, PageID.205 n.10 ("In deciding this motion, this Court may properly consider [Defendant's] supplemental subpoena

production and account records attached as Exhibit 2 . . . ."); *id.* at PageID.200 n.2, 209, 213; ECF No. 13, PageID.288–289.) In its reply in support of its objection, Defendant recognizes that it is reasserting an argument that appears in its motion to dismiss regarding the Court's consideration of the electronic account records. (*See* ECF No. 19, PageID.370 ("As argued in [Defendant's] motion to dismiss, this Court may dismiss Plaintiff's complaint for failure to state a claim, as ample authority holds that if a document referred to in the complaint (as the records are)[4] 'contradicts allegations in the complaint . . . the exhibit trumps the allegations.' *Land & Buildings Inv. Mgmt., LLC v. Taubman Centers, Inc.*, 751 F. App'x 612, 617 (6th Cir. 2018).").) In addition, the caselaw Defendant quotes in its objection was also quoted in its motion. (ECF No. 15, PageID.324–325; ECF No. 6, PageID.203 n.6, 206 (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007)); ECF No. 6, PageID.206–207 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.

---

[4] The R&R does not find that the electronic account records are referred to in the amended complaint. Rather, the R&R "agrees with Plaintiff that the screenshot account documents are not referred to in the complaint." (ECF No. 14, PageID.300 (citing ECF No. 1, PageID.8–18).) Defendant does not demonstrate that the R&R's finding is erroneous.

2008)); ECF No. 6, PageID.207 (quoting *Land & Buildings Inv. Mgmt., LLC*, 751 F. App'x at 617; *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)).) The issue of whether it is permissible for the Court to consider the electronic account records in deciding Defendant's motion—and the cases Defendant references in its objection—were before Magistrate Judge Ivy prior to the issuance of the R&R. As a result, this portion of Defendant's objection is invalid. *See Coleman-Bey*, 287 F. App'x at 422.

Accordingly, Defendant's objection regarding the R&R's analysis of the breach-of-contract claim in Count I is overruled.

## B. Plaintiff's Objection to the R&R's Recommendation to Dismiss the Conversion Claims in Count III

In her first objection, Plaintiff disagrees with the R&R's conclusion that the economic-loss doctrine[5] bars the common-law and

---

[5] Neither party objects to the R&R's application of the economic-loss doctrine or the use of the name "economic-loss doctrine" to refer to the principle being applied. In its motion, Defendant seeks dismissal of the conversion claims under the "*Hart v. Ludwig* doctrine." (ECF No. 6, PageID.217; *see* ECF No. 13, PageID.293.) In its response to Plaintiff's objections, Defendant states that

[t]he "economic loss doctrine" is also referred to as the "*Hart v. Ludwig* doctrine" and the "separate and distinct doctrine," depending upon the case context. The underlying premise for all three doctrines is that a plaintiff may not recover in tort for alleged acts or omissions where the

only duty governing those acts or omissions arises out of a contractual relationship between the parties. "[I]n case of nonfeasance in performance of a contract . . . an action sounding in tort cannot be founded thereon." *Hart v. Ludwig*, 347 Mich. 559, 562, 79 N.W.2d 895, 897 (1956). For purposes of simplicity, and as the Magistrate Judge has used the term "economic loss doctrine," [Defendant] uses that term herein.

(ECF No. 18, PageID.358, n.1.)

Based on an unpublished Michigan Court of Appeals decision dated April 18, 2024, the R&R "incorrectly conclude[s] that the economic-loss doctrine bar[s] [Plaintiff's] conversion claim[s]." *1-800 Bathtub, LLC v. ReBath, LLC*, No. 357932, 2024 WL 1689099, at *5 (Mich. Ct. App. Apr. 18, 2024), *appeal denied*, 11 N.W.3d 490 (Mich. 2024). The economic-loss doctrine provides that "generally, economic losses that relate to commercial transactions are not recoverable in tort." *Id.* at *6 (citing *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 376 (2002)). Michigan courts "have only applied the economic-loss doctrine to contracts for goods." *Id.* at *7; *see Oakmont Livonia, LLC v. Rhodium Cap. Advisors LLC*, No. 22-11128, 2024 WL 199545, at *4 n.2 (E.D. Mich. Jan. 18, 2024) ("The economic loss doctrine only applies to the sale of goods." (citing *MD Holdings, LLC v. R. L. Deppmann Co.*, No. 357462, 2022 WL 15527573, at *6 (Mich. Ct. App. Oct. 27, 2022))). This case does not involve the sale of goods, so the economic-loss doctrine does not apply. *See 1-800 Bathtub, LLC*, 2024 WL 1689099, at *7; *MD Holdings, LLC*, 2022 WL 15527573, at *6 ("Th[e economic-loss] doctrine does not apply to the instant case, which does not involve the sale of goods."). Moreover, "though neither th[e Michigan] Court [of Appeals] nor [the Michigan] Supreme Court have explicitly recognized the intentional tort of conversion as an exception to the economic-loss doctrine, the policy concerns underpinning the doctrine suggest that intentional torts, including conversion, are exceptions." *1-800 Bathtub, LLC*, 2024 WL 1689099, at *7 (internal citation omitted).

The R&R nonetheless considers the applicable "separate-and-distinct" standard in determining that Plaintiff's conversion claims should be dismissed. (*See* ECF No. 14, PageID.309–310.) In *Hart v. Ludwig*, 347 Mich. 559 (1956), the Michigan Supreme Court "first addressed whether a plaintiff could maintain an action in tort arising out of a breach of contract." *1-800 Bathtub, LLC*, 2024 WL 1689099, at *7. The court held in *Hart* that

statutory conversion claims in Count III. (ECF No. 16, PageID.328–329 (quoting ECF No. 14, PageID.310).) She argues that she "should be permitted to proceed forward with her conversion claims." (*Id.* at

---

"[a]s a general rule, there must be some active negligence or misfeasance to support a tort. *There must be some breach of duty distinct from breach of contract.*" [*Hart*, 347 Mich.] at 563 (emphasis added). "[T]he threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr Corp v Mich Bell Tel Co*, 454 Mich 65, 84; 559 NW2d 647 (1997).

*MD Holdings, LLC*, 2022 WL 15527573, at *6 (last alteration in original); *see Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157, 171 (2011). According to the Michigan Court of Appeals, "[i]t is unclear whether the separate-and-distinct analysis has been adopted into the analysis required for the economic-loss doctrine." *1-800 Bathtub, LLC*, 2024 WL 1689099, at *7 n.7 ("analyz[ing] the economic-loss doctrine and the separate-and-distinct analysis separately"); *but see Oakmont Livonia, LLC*, 2024 WL 199545, at *4 n.2 (stating that the "separate and distinct . . . rule of *Hart*" is a "similar rule" to the economic-loss doctrine); *Chemico Sys., Inc. v. Spencer*, No. 22-11027, 2023 WL 1993783, at *6 (E.D. Mich. Feb. 14, 2023) ("Though [the motion] refers to th[e] principle [that parties generally cannot sue in tort over relationships governed by contract] as the 'economic-loss doctrine,' in this context, it is more appropriately called the *Hart* rule."); *Chemico Sys., Inc.*, 2023 WL 1993783, at *6 n.2 (stating that "the distinction [between the economic-loss doctrine and the *Hart* rule] seems to have faded in the caselaw in more recent years" (citing *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015); Vincent A. Wellman, Assessing the Economic Loss Doctrine in Michigan: Making Sense Out of the Development of Law, 54 Wayne L. Rev. 791, 821–23 (2008))). The R&R's approach is therefore understandable. Because the R&R conducts a separate-and-distinct assessment (*see* ECF No. 14, PageID.309–310), and because no party objects, the Court does not reject the relevant portions of the R&R to the extent the R&R incorrectly uses the name "economic-loss doctrine." The Court references the economic-loss doctrine in addressing Plaintiff's objection above because that is the label used in the R&R and the briefing.

14

PageID.329.) Plaintiff's objection fails. The objection does not show that the R&R's conclusion is incorrect.

Plaintiff argues that the R&R is flawed because it "ignores" a case she referenced in her response to Defendant's motion: *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 497 Mich. 337 (2015). (ECF No. 16, PageID.329.) Plaintiff asserts that that case is "the leading case on both common law and statutory conversion." (*Id.*; *see* ECF No. 10, PageID.279–280.) She appears to assert that the case demonstrates that the R&R "misstate[s]" the law in finding that "Plaintiff may not make a conversion claim when the relationship of the parties is governed by a contract between them." (ECF No. 16, PageID.329; *see* ECF No. 10, PageID.279.) According to Plaintiff,

> [i]n *Aroma Wines*, the parties <u>had a contract</u> which governed their relationship. *Id.* @ 337. Despite that undeniable fact, the Michigan Supreme Court permitted the action to go forward on its statutory conversion claim. *Id.* @ 361. The Magistrate[ Judge]'s Report and Recommendation ignored the application of *Aroma Wines*. *Aroma Wines* is indistinguishable.

(ECF No. 16, PageID.328 (emphasis in original).)

To the extent Plaintiff's argument regarding *Aroma Wines* repeats an argument she made in her response to Defendant's motion (ECF No.

15

10, PageID.279–280), this portion of Plaintiff's objection is improper. *See Coleman-Bey*, 287 F. App'x at 422. Further, Plaintiff's reliance on *Aroma Wines* is misplaced. That case does not support Plaintiff's position regarding her conversion claims. It does not show that she "should be permitted to proceed forward with [those] claims." (ECF No. 16, PageID.329.)

In *Aroma Wines*, the Michigan Supreme Court addressed how to interpret certain language in the statutory conversion statute, Mich. Comp. Laws § 600.2919a. The court "granted both parties' applications for leave to appeal, limited to the single issue regarding 'the proper interpretation of "converting property to the other person's own use," as used in MCL 600.2919a.'" *Aroma Wines & Equip, Inc.*, 497 Mich. at 344–45; *see id.* at 354 ("The interpretive issue before [the court] is whether . . . language in [Mich. Comp. Laws § 600.2919a](1)(a) allows a plaintiff to recover treble damages in all instances of common-law conversion or, instead, whether a plaintiff seeking damages for conversion under Subsection (1)(a) must allege additional conduct to show that the defendant converted the plaintiff's property 'to the [defendant's] own use.'" (last alteration in original)). The Michigan

Supreme Court "consider[ed] whether this statutory language is coextensive with the common-law tort of conversion or, if not, what additional conduct is required to show that a defendant converted property to his, her, or its 'own use.'" *Id.* at 339–40; *see id.* at 346 ("At issue here is whether a plaintiff who has proved common-law conversion necessarily has a cause of action under MCL 600.2919a(1)(a) and, if not, what additional conduct is required to show that a defendant converted property to his, her, or its own use."). The court "h[e]ld that 'converting property to [that] person's own use,' as used in MCL 600.2919a, is not coextensive with common-law conversion." *Id.* at 340 (second alteration in original). The Michigan Supreme Court "agree[d] with the Court of Appeals that someone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* at 359. The Michigan Supreme Court then applied that finding to "the specific evidence presented in th[at] case to determine whether [the defendant was] entitled to a directed verdict on [the plaintiff's] statutory conversion claim." *Id.* The

17

court found that the defendant was not entitled to a directed verdict on that claim because the plaintiff "presented evidence during its case-in-chief that would allow a jury to find that [the defendant] converted [the plaintiff's] property to its own use within the meaning of MCL 600.2919a(1)(a)." *Id.* at 361. The case was remanded to the Kent Circuit Court "for further proceedings consistent with th[e] opinion." *Id.* at 362.

Thus, the Michigan Supreme Court in *Aroma Wines* interpreted language in Mich. Comp. Laws § 600.2919a(1)(a) and concluded that "the tort [of statutory conversion] established in [that provision] is not the same as common-law conversion." *Id.* at 361. As noted by Defendant, "[n]owhere in the opinion does the [Michigan Supreme] Court address, mention, or consider the applicability of the economic loss doctrine or any related doctrine, nor is there any scintilla of evidence that the question was ever raised by the parties before any of the courts that considered the case." (ECF No. 18, PageID.360.) The Michigan Supreme Court "affirm[ed] the Court of Appeals' conclusion that [the defendant was] not entitled to a directed verdict on [the plaintiff's] statutory conversion claim and remand[ed] th[e] case" based on the interpretation of the relevant statutory language and a review of

18

the particular evidence presented to the jury in that case—not because a contract existed between the parties. *Aroma Wines & Equip, Inc.*, 497 Mich. at 361–62. Plaintiff does not establish that *Aroma Wines* applies. Therefore, the R&R's failure to mention *Aroma Wines* does not provide a reason for the Court to reject the R&R.

Plaintiff also challenges the R&R's recommendation to dismiss the conversion claims on the basis that the R&R "misapplied to this case[ ] the general holding that the 'economic loss doctrine exists, at least in part, to bar tort claims arising from a contract where the risk giving rise to the claims **could have been anticipated and discussed in the bargaining process**." (ECF No. 16, PageID.329–330 (emphasis in original) (quoting ECF No. 14, PageID.309).) Plaintiff asserts that she

> was the designated beneficiary on her mother's account. She was not present when the account was opened, and had no participation in the "contractual bargaining process" during the opening of the account. The Plaintiff, as third-party beneficiary, could not have anticipated Defendant's failure to distribute the proceeds of the account to the sole designated beneficiary at the account holder's death, nor could she have bargained with Defendant over the terms outlined in its deposit account agreement due to her status as a mere beneficiary of the account at her mother's death. . . . The power dynamic between Defendant and its customers, including [account holder Minnie Hazel] Carter, leaves no

19

> reasonable impression that individual customers transacting with Defendant hold any capability to bargain with Defendant over its deposit account agreement.

(*Id.* at PageID.330–331.)

This argument within Plaintiff's objection lacks merit. Plaintiff objects to a sentence in the R&R that appears in a paragraph discussing the economic-loss doctrine. The sentence states: "The economic loss doctrine exists, at least in part, to bar tort claims arising from a contract where the risk giving rise to the claims could have been anticipated and discussed in the bargaining process. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016) (citation omitted)." (ECF No. 14, PageID.309.) The sentence at issue presents one purpose of the economic-loss doctrine. The sentence does not identify a condition that must be met for the doctrine to apply. Nor does it identify a particular rule that the Court must consider. Plaintiff does not show that the R&R misapplied the law.

Plaintiff next argues that "Defendant had a legal duty separately and distinctly from Defendant's contractual obligations, which precludes applying the economic loss doctrine." (ECF No. 16, PageID.331.) She argues that a "quasi-bailment relationship between

Defendant and Plaintiff, as designated beneficiary post-death of the account holder[,] raises obligations beyond the depositor-bank relationship that was created by Ms. Carter during her life, and imposes obligations separate and apart from the contractual deposit agreement between Ms. Carter and the Defendant." (*Id.* at PageID.332.)

This argument regarding a "quasi-bailment relationship" is an improper objection because it presents a new argument or issue that was not before Magistrate Judge Ivy. "Parties may not 'raise at the district court stage new arguments or issues that were not presented' *before* the magistrate judge's final R&R." *Austin v. Stapleton*, 628 F. Supp. 3d 702, 706 (E.D. Mich. 2022) (emphasis in original) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)) (overruling an objection that contained an argument that was not made to the magistrate judge). Plaintiff's objection contains information that was not presented to Magistrate Judge Ivy before he issued the R&R. The argument in Plaintiff's objection about a "quasi-bailment relationship" is therefore invalid.

21

Accordingly, Plaintiff's first objection—in which she challenges the R&R's recommendation to dismiss the common-law and statutory conversion claims in Count III—is overruled.

### C. Plaintiff's Objection to Certain Language in the R&R on Rule 12(b)(7) and Joinder of Necessary Parties

In her second objection, Plaintiff takes issue with the portion of the R&R "that suggests that if [Jeffrey] Carter and [Eva] Schlenkert[6] are joined as party defendants, the Court must assess whether to dismiss the case." (ECF No. 16, PageID.333.) This objection fails because it mischaracterizes what the R&R says. The relevant language from the R&R is as follows:

> The next issue is whether . . . joinder is feasible. The Court's subject-matter jurisdiction is based on the diversity of the parties. Plaintiff resides in Michigan,[7] Defendant is a citizen of Ohio. (ECF No. 1). Mr. Carter and Ms. Schlenkert would presumably be joined as defendants to defend against Plaintiff's entitlement to 100% of the account proceeds

---

[6] According to Defendant, Jeffrey Carter and Eva Schlenkert are two individuals who, in addition to Plaintiff, are designated in Defendant's electronic account records as beneficiaries on the relevant accounts and "are also [account holder Minnie Hazel] Carter's children." (ECF No. 6, PageID.200–201.) Plaintiff disputes that these individuals are beneficiaries, but she does not dispute that they are Ms. Carter's children.

[7] The Court notes that both the removal notice and the amended complaint allege that Plaintiff is a citizen of Michigan. (ECF No. 1, PageID.2, 8.)

rather than prosecuting a case against [Defendant] for payment of one-third of the accounts to each beneficiary. Since this is not an interpleader action, the parties' positioning is somewhat awkward. Neither Plaintiff nor Defendant stated the others' citizenship, thus it is impossible for the undersigned to say whether joinder i[s] feasible.

*If joinder is not feasible*, then the Court has to assess whether to dismiss the case under Rule 19(b). The rule provides factors for consideration. . . .

(ECF No. 14, PageID.313 (emphasis added).) The R&R thus states that the Court must assess whether to dismiss the case under Rule 19(b) "[i]f joinder is *not* feasible." (*Id.* (emphasis added).) The R&R does not state that dismissal must be assessed "if Mr. Carter and Ms. Schlenkert are joined as party defendants," as Plaintiff asserts in her objection. (ECF No. 16, PageID.333.) As a result, this part of Plaintiff's objection lacks merit.

Plaintiff states in her objection that she "agrees [with the R&R] that if Mr. Carter and Ms. Schlenkert are later joined as parties, they must be joined as party defendants, rather than party plaintiffs." (*Id.*) In addition, she notes that "[t]he Court is exercising diversity jurisdiction pursuant to the Defendant's removal of this case from state court," and she argues that "to the extent that Defendant further briefs

the indispensable party issue, and to the extent that the Court determines that parties must be added as indispensable parties and diversity jurisdiction (and therefore subject matter jurisdiction) is destroyed, dismissal is inappropriate, remand to state court is mandatory." (*Id.* at PageID.333–334.) In its response, Defendant states that it "is not necessarily the case" that "if Mr. Carter and Ms. Schlenkert are joined as parties, they must be joined as party defendants, rather than party plaintiffs." (ECF No. 18, PageID.366.) Defendant indicates that it "is willing to provide additional briefing on this matter, as suggested by Magistrate Judge Ivy." (*Id.*) Plaintiff presents no reason for the Court to reject the R&R's recommendation that "th[e] portion of Defendant's motion [brought under Rule 12(b)(7)] be denied without prejudice allowing that issue to be raised more completely in a new motion." (ECF No. 14, PageID.314.) Therefore, the Court adopts this recommendation. Any issues regarding Rule 12(b)(7) and joinder can be addressed by the parties in future briefing.

Accordingly, Plaintiff's second objection—in which she disagrees with certain language in the R&R on Rule 12(b)(7) and joinder of necessary parties—is overruled.

24

## IV. Conclusion

For the reasons set forth above, the parties' objections (ECF Nos. 15, 16) are OVERRULED. The R&R (ECF No. 14) is ADOPTED, and Defendant's motion to dismiss (ECF No. 6) is GRANTED IN PART AND DENIED IN PART. Plaintiff's breach-of-contract claim in Count I proceeds. But Plaintiff's remaining claims in Counts II and III are dismissed. The portion of Defendant's motion seeking dismissal under Rule 12(b)(7) is denied without prejudice.

IT IS SO ORDERED.

Dated: March 14, 2025          s/Judith E. Levy
    Ann Arbor, Michigan          JUDITH E. LEVY
                                           United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 14, 2025.

                                      s/Joseph Heacox
                                      On behalf of William Barkholz
                                      Case Manager